UNITED STATES BANKRUPTCY COURT
DISTRICT OF ALASKA

In re:

CHRISTOPHER ANDREW TAYLOR,

                                    Debtor.

LUIS EDDIE COSME, II,

                                    Plaintiff,

    v.

CHRISTOPHER ANDREW TAYLOR,

                                    Defendant.

Bankruptcy Case No: 24-00025-GS
Chapter 7

Adversary Proc. No. 24-90001-GS

**MEMORANDUM DECISION AFTER TRIAL**

<u>Trial</u>
DATE: December 6, 2024
TIME: 9:30 a.m.

Creditor Luis Cosme, II seeks to except from discharge under § 523(a)(2)(A) a judgment debt for $6,410. This amount represents the aggregate Cosme paid to debtor and defendant Christopher Taylor as deposits for two projects Taylor contracted to remodel portions of Cosme's house. According to Cosme, Taylor never really intended to do any remodeling work for Cosme but instead knowingly and fraudulently promised that he would do the remodeling work solely to induce Cosme to pay the deposits. In essence, Cosme claims that Taylor induced him to make the deposits under false pretenses.

The parties proceeded to trial on the § 523(a)(2)(A) claim on December 6, 2024. Both parties represented themselves without the benefit of counsel. The only material factual issue disputed at trial concerned Taylor's state of mind at the time he received the deposits. Based on the evidence presented, the court finds that Cosme has proven by a preponderance of the evidence that at the time Taylor received the deposits, he had no intention of performing the remodeling work. Rather, Taylor knowingly misrepresented to Cosme what he intended to do solely for the purpose of fraudulently inducing Cosme to pay him the deposits.

1

**Facts**

After some preliminary negotiations earlier in March 2022, Taylor emailed Cosme on March 23, 2022, **separate** bids to remodel the upstairs and downstairs bathrooms in Cosme's house. Taylor quoted Cosme $4,665 for the downstairs bathroom remodel and $8,165 for the upstairs bathroom remodel. Trial Ex. 2c.

In addition to the bid amounts, Taylor's March 23, 2022 email further indicated that Cosme was free to accept "one or both bids." *Id.* There is no indication in the email that the price of either bid was conditional on Cosme's acceptance of both bids. To the contrary, there was only one stated prerequisite for Cosme's acceptance of one or both bids. As Taylor put it, "I will require a down payment [sic] of half the the [sic] bid for each project with the rest to be paid at completion." *Id.* The March 23, 2022 email further detailed that if Cosme indicated his desire to proceed "with one or both bids," Taylor would draft a formal written contract "detailing the project and payment schedule." Also of import, Taylor advised Cosme that, "[c]urrently I am about 4 weeks out from being able to start on your project." *Id.*

Cosme initially paid the downstairs bathroom deposit via Paypal on or about March 25, 2022, but Taylor refunded this initial deposit because he wanted the payment to be made through Venmo. Trial Ex. 2b. Cosme then repaid the $2,330 downstairs deposit via Venmo on or about March 26. Trial Ex. 2g. On April 6, 2022, Cosme paid Taylor via Venmo $3,165 towards the upstairs deposit—as well as another $916 on April 11, 2022, to complete the upstairs deposit. Trial Ex. 2d.[1]

---

[1] In addition to Taylor's March 23, 2022 email, there were texts going back and forth between the parties. Some but not all of these texts were admitted into evidence as Trial Exhibit 2f. They are difficult to follow because they are not completely in chronological order, and some were sent via the parties' messaging app while others were sent via Facebook. Trial Ex 2f. Regardless, there are only two relevant texts pre-dating full payment of all deposits. These two texts are both from Taylor to Cosme and both are dated April 6, presumably in 2022. When read together, and in conjunction with Cosme's testimony and his timeline (Trial Ex. 2g), these texts reflect that by April 6, 2022, Cosme had paid the full deposit of $2,330 for the downstairs bathroom remodel and a partial deposit of $3,165 for the upstairs bathroom remodel. As of that date, Cosme still needed to pay an additional $915 to complete the deposit for the upstairs bathroom remodel.

2

There is no evidence that the basic contractual offer set forth in the March 23, 2022 email changed between the time that email was sent and the time Cosme paid the deposits. Nor is there any indication that the parties' agreement changed between the time of payment of the deposits and Taylor's promised start date of April 25, 2022. According to Cosme's trial testimony, Taylor promised to start work on April 25, 2022, but Taylor did not commence work as agreed. He did not show up to the house or respond to Cosme's phone inquiries for seven days thereafter. Nor did he ever provide the formal written contract for the upstairs bathroom as promised. Taylor never disputed Cosme's account of what transpired in March and April of 2022. And he offered no testimony to explain why he did not provide the upstairs bathroom contract or start work by April 25, 2022. He did offer other excuses covering other time periods over the summer of 2022, but nothing to explain why he failed to perform in April 2022.

On May 3, 2022, Cosme sent a series of texts to Taylor asking him why he hadn't started the remodeling on April 25 as promised. The texts pointed out that he had tried calling Taylor several times since for an update without receiving any response. Cosme also advised Taylor that he and his wife had changed their minds about remodeling the downstairs bathroom and asked whether they could transfer the downpayment for that project to the upstairs bathroom remodel. Trial Ex. 2f, p. 18.

On May 4, 2022, Taylor responded by text to Cosme. Trial Ex. 2f, pp. 18-19. He did not dispute that he had promised to start Cosme's project on April 25. Nor did he offer any explanation for the delay. *Id.* Moreover, in spite of what he had said in his March 23, 2022 email, he now claimed that the amounts he bid for "both jobs" were "somewhat tied together," so he would "prefer if we stuck with the original contracts . . . ." *Id*.

According to Cosme, he advised Taylor on June 12, 2022, of his firm decision to only remodel the upstairs bathroom. Trial Ex. 2g; Trial Ex. 2f, pp. 18-22. In a responsive text Taylor sent on June 13, 2022, he replied that he would need to revisit the bid he gave for the upstairs bathroom because his bids were based on his assumption that he would be remodeling both

3

bathrooms. Trial Ex. 2f, p. 22. Again, this statement is inconsistent with Taylor's March 23, 2022 email, as explained above. In any event, Taylor indicated that he would send Cosme a revised bid for the upstairs bathroom within a few days. *Id*. On June 26, 2022, having not received any revised bid and no work having been done within two months of the promised April 25, 2022, start date, Cosme texted Taylor to tell him that he wanted to cancel both projects and wanted both deposits refunded. Trial Ex. 2f, pp. 18-22.

For roughly the next month and-a-half, the parties went back and forth about who was responsible for the delays and potential damages each party claimed to have suffered. The parties also discussed potential cancellation, potential reconciliation, potential new start dates and potential revised contracts. Trial Ex. 2f, pp. 19-39. Near the middle of August 2022, the parties agreed to go forward with the remodel of the upstairs bathroom. In addition, Taylor promised to provide Cosme with a written contract for that remodeling work and that he would be able by the end of October to give Cosme a firm start date for the remodeling work for sometime after October. Trial Ex. 2f, 36-39.

As of December 5, 2022, Taylor still had not given Cosme any written contract for the upstairs bathroom remodel. Nor had he provided Cosme any start date for the remodeling work. Taylor also failed to give Cosme any updates or explanations for Taylor's further delays. At trial, Taylor did essentially nothing to dispute Cosme's account of what transpired between August 2022 and December 2022. Significantly, he failed to offer any explanation for—or have any recollection of—what occurred between August 2022 and December 2022 that prevented him from honoring the parties' agreement as revised in August 2022.

Roughly a year later, in December 2023, Cosme obtained a state court default judgment against Taylor for $6,410, the full amount he had paid in deposits for both remodeling projects.

In February 2024, Taylor filed his chapter 7 bankruptcy. Cosme then sued Taylor to except the judgment debt from discharge. Taylor has not disputed the amount of the debt or his liability

4

for that debt. Nor has he challenged any of the elements for nondischargeability except for those related to his state of mind.

This court heard testimony from Cosme, as well as from several other witnesses who were former customers of Taylor's. In general, the court finds credible the testimony of all of these witnesses—Cosme and the other customers. The testimony of the other customers largely mirrored Cosme's testimony regarding his experience with Taylor. Taylor promised to do contracting work for them, took their deposits, and then Taylor either completely failed to perform, or barely started the contracted-for projects before abandoning them. Cosme and his witnesses were clearly angry with Taylor's breaches of their contracts and believed that he had defrauded them. While the court finds these witnesses credible, their conclusory belief that Taylor defrauded them is unhelpful to the legal analysis for the claim brought under § 523(a)(2)(A). Though the court has no doubt that the witnesses believe they have been defrauded, the court has disregarded their conclusory testimony on this ultimate question.

At trial, Taylor came across as both intelligent and articulate. Indeed, during his closing argument, he was able to clearly state—and focus on—the controlling issue that was the subject of the trial: whether at the time he received Cosme's deposits for both remodeling projects, he had any real intention of performing any remodeling work for Cosme. Trial Tr. 5/minutes 4-16. However, Taylor's complete honesty and candor before the court were not as evident as his intelligence. He tended to paint the relevant facts with an exceptionally broad brush and ignored the timing of events as they occurred. This tended to make it sound like he was more forthcoming with Cosme and his other clients than he actually was. For example, he claimed that he had warned Cosme and some of his other clients of his poor financial condition. But an examination of the evidence indicates that he made these so-called financial warnings **after** he had received his clients' deposits. In fact, he offered up his poor financial condition in response to these clients' requests for the return of their deposits in light of his non-performance and as a justification for not refunding the deposits.

5

As important as what Taylor said is what he didn't say. Taylor presented absolutely no testimony, or exhibits to show that he has ever successfully completed any work as a contractor or has had a single satisfied client.[2] Nor did he attempt to explain why he had not performed as agreed for any of the testifying clients after taking their deposits. At most, he rather vaguely suggested that he was not a good contractor, that he was always "busy," and that he was financially overwhelmed most of the time. Given the lack of any corroborating evidence at trial of these material facts, the court discounts such testimony as not credible.

**Analysis**

Section 523(a)(2)(A) excepts from discharge debts incurred through "false pretenses, a false representation, or actual fraud." To establish actual fraud for purposes of § 523(a)(2)(A), a creditor must prove by a preponderance of the evidence each of the following elements: "(1) misrepresentation, fraudulent omission or deceptive conduct by the debtor; (2) knowledge of the falsity or deceptiveness of his statement or conduct; (3) an intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately caused by its reliance on the debtor's statement or conduct." *Oney v. Weinberg (In re Weinberg)*, 410 B.R. 19, 35 (B.A.P. 9th Cir. 2009) (quoting *Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman)*, 234 F.3d 1081, 1085 (9th Cir.2000)), *aff'd*, 407 F. App'x 176 (9th Cir. 2010).

A "false promise" is one type of misrepresentation that can lead to a nondischargeable debt under § 523(a)(2)(A), but only if the debtor harbored an intention not to perform at the time the promise was made; a subsequently-developed intent to not perform is insufficient for nondischargeability. *Wagner v. Malich (In re Malich)*, 2011 WL 3300818, at 5 (B.A.P. 9th Cir. Mar. 15, 2011) (citing *Eashai v. Citibank, South Dakota, N.A., (In re Eashai)*, 167 B.R. 181, 185 (B.A.P. 9th Cir. 1994), *aff'd*, 87 F.3d 1082 (9th Cir.1996)).

---

[2] Significantly, the first time Taylor mentioned other projects and other customers was after the close of evidence during closing argument.

6

At trial, Taylor focused on the issue of his state of mind. He argued that at the time he received Cosme's deposits, he intended to perform the bathroom remodeling work as he had promised Cosme. If accepted, such intent would preclude any finding in favor of Cosme on the first three elements for nondischargeable fraud. Absent a contemporaneous intent to not perform, there would be no false promise (element one), no knowing falsity (element two), and no fraudulent intent (element three). Taylor has not challenged the existence of the fourth and fifth fraud elements. Indeed, there is ample evidence to show that Taylor's promised remodeling work induced Cosme to pay the deposits, that Cosme justifiably relied on Taylor's promises, and that as a proximate result of Cosme's reliance, Taylor became indebted to Cosme in the amount of $6,410. On this basis, the court finds in favor Cosme on the fourth and fifth fraud elements.

Thus, the controlling disputed issue concerns Taylor's state of mind. As is typical of state of mind issues in nondischargeability actions, the court must objectively discern Taylor's subjective state of mind based on the circumstantial evidence presented. *See Carrilllo v. Su (In re Su)*, 290 F.3d 1140, 1146 & n.6 (9th Cir. 2002); *Cowen v. Kennedy (In re Kennedy)*, 108 F.3d 1015, 1018 (9th Cir. 1997), *as amended,* (Mar. 21, 1997); *see also Nahman v. Jacks (In re Jacks)*, 266 B.R. 728, 742 (B.A.P. 9th Cir. 2001) ("subjective intent may be gleaned from objective factors"); *Gertsch v. Johnson & Johnson, Fin. Corp. (In re Gertsch)*, 237 B.R. 160, 167 (B.A.P. 9th Cir. 1999) ("intent to deceive can be inferred from the totality of circumstances").

The court has reviewed all of the evidence submitted and finds based thereon that at the time Taylor received Cosme's deposits he harbored the requisite state of mind to defraud Cosme. Stated more bluntly, Taylor took Cosme's deposits knowing that he had no intention of remodeling Cosme's bathrooms as promised and he made promises for the sole purpose of fraudulently inducing Cosme to pay the deposits. As such, Cosme has proven the first, second, and third elements for nondischargeable fraud: a misrepresentation in the form of a false promise, made knowingly, and made with the intent to deceive Cosme.

If one were to focus solely on the interactions between Taylor and Cosme, it arguably would be a closer call as to whether the evidence tips[3] in favor of Cosme on Taylor's state of mind at the time Cosme paid the deposits. On the one hand, the numerosity and detail of communications going from Taylor to Cosme between March and December 2022 arguably suggests bona fide discussions regarding the remodeling work Taylor was purporting to undertake on Cosme's behalf. On the other hand, Taylor evidently used such ongoing discussions to provide an ostensible justification for continuously delaying the start of the project – for which **no** work was ever performed. Taylor's wholly unexplained failure to perform in April 2022, and his similar failure to perform between September and December 2022, militates in favor of a finding that he never really intended to do any remodeling work at the time he originally promised to do so.

To be clear, the court holds that the fraud occurred in March and early April 2022, when Taylor induced Cosme to pay the deposits. In the technical, legal sense, there is no evidence of any separate fraud **after** Cosme paid the deposits. More specifically, there is no evidence that after he paid the deposits, Cosme acted or refrained from acting to his detriment as a result of his relying on anything Taylor said or did. *See generally Siriani v. Nw. Nat'l Ins. Co. (In re Siriani)*, 967 F.2d 302, 305 (9th Cir. 1992) (explaining what a creditor must show to establish nondischargeable fraud arising from creditor's forbearance in enforcing pre-existing debt); *Hung Bank v. Kim (In re Kim)*, 163 B.R. 157, 160-61 (B.A.P. 9th Cir. 1994) (following *Siriani*), *aff'd & adopted*, 62 F.3d 1511 (9th Cir. Aug. 23, 1995). Nonetheless, the parties' interactions **after** Cosme paid the deposits are still relevant for purposes of inferring Taylor's state of mind **before** Cosme paid the deposits, largely because it evidences continued delays and ultimately no work ever being performed. While a close call, the court holds that Taylor did knowingly and fraudulently make a false representation

---

[3] A factual matter is proven by a preponderance of the evidence when the evidence demonstrates that it is more likely than not true. *See, e.g.*, *United States v. Collins*, 551 F.3d 914, 920 (9th Cir. 2009); *see also United States v. Montano*, 250 F.3d 709, 713 (9th Cir. 2001) ("Under the preponderance of the evidence standard, the relevant facts must be shown to be more likely true than not.").

8

to Cosme at the beginning of the negotiations that he would perform one or both of the bathroom remodels for the purpose of obtaining Cosme's deposits.

That said, Cosme also introduced evidence from Taylor's other customers on other jobs that Taylor was supposed to complete around the same time frame as Cosme's remodel. This evidence bolsters this court's finding that Taylor did not intend to perform his contractual obligations when he took Cosme's deposits. The evidence included in-person testimony of Taylor's other customers, and the related exhibits referenced or authenticated by each of these witnesses. Such evidence was admitted without objection.

These witnesses uniformly expressed the opinion that Taylor is a dishonest and deceitful man in his business dealings. Fed. R. Evid. 404(a) prohibits the use of a person's character "to prove that on a particular occasion the person acted in accordance with the character or trait." *See* Hon. Barry Russell, Bankruptcy Evidence Manual, at § 404:1 (2024). Though no objection was raised to this evidence at trial, I attach no weight to their assessment of Taylor's character to the extent that Cosme simply argues that Taylor acted in accordance with some bad character or trait. However, Fed. R. Evid. 404(b)(2) expressly permits evidence of other wrongs or bad acts to prove knowledge or intent. *See* Bankruptcy Evidence Manual, at § 404:2. *Taylor v. DeFalco (In re DeFalco),* 353 B.R. 449 (Bankr. W.D. Pa. 2006), presented a similar situation in which the bankruptcy court allowed testimony, over the debtor's objection, from nonparty witnesses to establish intent to defraud under § 523(a)(2)(A). There, a husband and wife sued to hold their claim against the debtor nondischargeable where they gave the debtor money for construction work that he never performed. The court admitted the testimony from the non-party witnesses "that they gave the Debtor money upfront for a promise by the Debtor to perform services, which services were ultimately never performed." *Id.* at 449. In doing so, the court overruled the debtor's objection to the evidence as properly directed to the issue of fraudulent intent pursuant to Fed. R. Evid. 404(b), noting that the evidence was compelling. *Id.; see also Labor Comm'r, State of California v. Ramirez (In re Ramirez)*, 556 B.R. 446, 454 n.6 (Bankr. N.D. Cal. 2016) (permitting

9

testimony from nonparty witnesses about other unpaid wage debts under Fed. R. Evid. 404(b)(2) to establish intent to defraud in support of § 523(a)(2)(A) claim). The court finds the testimony from Taylor's other customers to be equally compelling.

Here, each witness paid Taylor a deposit in expectation that he would complete their construction or remodeling project as agreed. They uniformly testified—and the corresponding exhibits corroborated—that in each instance Taylor either did not do any of the work promised, or else he initially did a little work before abandoning the project entirely. *See* Trial Exs. 5, 7, 8, 9, 11. Some of these interactions occurred in the same year at roughly the same time as Cosme's interactions with Taylor. *See* Trial Exs. 5 (Barnack), 7 (Dailey), and 11 (Dewalt). One occurred later in time, *see* Trial Ex. 8 (McNeil), and another occurred earlier in time, *see* Trial Ex. 9 (Leonard). The nature of the projects varied greatly. One was for building a deck (Barnack). Another was for converting a shed into a greenhouse (Dewalt). Yet another was for converting a basement into living space (McNeil). And another was for new windows and a kitchen remodel in an apartment unit (Dailey). Another customer (Leonard), similar to Cosme, contracted for remodeling of multiple bathrooms.

Importantly, Taylor failed to present any evidence of successful contracting projects he performed resulting in satisfied customers. As a result, the only evidence before the court is that during the Cosme remodel, Taylor solicited construction projects and obtained monies while performing little, if any, work. This drastically increases the probative value of Cosme's evidence presented to establish Taylor's history during the relevant time. Though Taylor could have had other customers who more or less received the contracting work they bargained for and paid for, there is **no** evidence in the record to support such an inference. This means that, on the evidence presented, the only reasonable finding to be made is that Taylor contracted with Cosme, and took the deposits, with no intent to perform any contracting work for him. Accordingly, when Taylor took Cosme's deposits, the court finds that Taylor was not genuinely seeking contracting work; instead, he was solely focused on, and interested in, obtaining deposits from Cosme so that he

10

could use the deposits to satisfy other personal or business expenses he felt compelled to pay. This finding is consistent with Taylor's admissions regarding his poor financial condition and his admitted practice of "robbing Peter to pay Paul."

The above findings establish the first, second, and third elements for nondischargeable fraud. Along with the previous findings regarding the fourth and fifth elements, Cosme has proven his § 523(a)(2)(A) claim against Taylor by a preponderance of the evidence.

In his closing argument, Taylor argued that there was no evidence that he ever told any of the customers who testified against him that he was cancelling their projects or would not eventually complete them. This argument only serves to emphasize that the problem was not with what Taylor specifically told his customers but with his hidden intent not to perform at the time he took Cosme's deposits. Taylor also attempted to make a "no-harm-no-foul" argument. He maintained that most of the customers who testified against him ultimately recouped most or all of their monetary losses by making claims against his bonding companies, or by enforcing judgments they eventually obtained against him, or by entering into repayment plans with him. Nothing in the record indicates that Cosme was able to recover any portion of the deposits he paid to Taylor. More importantly, Taylor's "no-harm-no-foul" argument betrays a rather cavalier—or even callous—attitude towards his clients' needs and desires. The fact that some of his clients eventually received monetary satisfaction of their claims is completely overshadowed by months or even years of frustrating yet fruitless efforts first to get their needed remodeling projects accomplished and later to obtain refunds of their deposits directly from Taylor.

11

**Conclusion**

For the reasons stated above, the court holds that Luis Cosme's default judgment against debtor Christopher Taylor is a debt arising from fraud and is nondischargeable under 11 U.S.C. § 523(a)(2)(A). The court shall enter a separate judgment consistent with this memorandum.

DATE: March 12, 2025                                          BY THE COURT

/s/ Gary Spraker
GARY SPRAKER
United States Bankruptcy Judge

Serve: L. Cosme, II
       C. Taylor
       ECF Participants via NEF

12